## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| C.H. ROBINSON WORLDWIDE, INC., | Civil No. 03-2978 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| GHIRARDELLI CHOCOLATE COMPANY, | |
| Defendant. | |

---

Richard J. Nygaard and Steven M. Sitek, **RIDER BENNETT**, 33 South Sixth Street, Suite 4900, Minneapolis, MN 55402, for plaintiff.

David A. Schooler, **LARSON KING**, 30 East Seventh Street, Suite 2800, St. Paul, MN 55101-4922, for defendant.

C.H. Robinson Worldwide ("CHRW") is a transportation and logistics company headquartered in Eden Prairie, Minnesota. Ghirardelli Chocolate Company ("GCC") manufactures gourmet chocolate products in San Leandro, California. In May 2002, GCC agreed to utilize CHRW for its transportation and logistics needs. The parties continued to work together until May 30, 2003. The parties disagree as to whether a written contract existed during this time. On April 29, 2003, CHRW filed suit seeking equitable relief and over $4 million in damages based on GCC's failure to pay for services performed. GCC counterclaimed, also seeking damages in excess of $4 million. CHRW moves for partial summary judgment and GCC moves for summary judgment on

all of CHRW's claims. For the reasons discussed below, both motions are granted in part and denied in part.

**BACKGROUND**

In 2001, CHRW agreed to conduct an independent transportation audit of GCC's transportation network. GCC provided CHRW with historical shipping information and proprietary information on contracts with its current shipping providers. On December 6, 2001, CHRW presented its conclusions from the audit to GCC. CHRW recommended that GCC hire CHRW to handle 100% of GCC's transportation and logistics needs and represented that GCC could save 10% on its shipping costs if GCC made significant changes to its transportation network.

In May 2002, GCC signed a Logistics Management Agreement ("LMA") provided by CHRW and sent it to CHRW. According to GCC, this contract covers the agreement between the parties and includes a guarantee that GCC would obtain a 10% savings on its shipping costs by using CHRW. GCC also alleges that CHRW verbally confirmed that the contract guaranteed a one-time 10% savings.

CHRW asserts, however, that the parties began conducting business on an "operation level" in May 2002, but that a written contract was never finalized. According to CHRW, the two parties were in the process of negotiating a contract and several versions had been exchanged, but that the LMA that GCC sent back to CHRW contained handwritten material changes that CHRW could not agree to. It is undisputed that CHRW did not sign the contract and never sent a copy back to GCC. CHRW further asserts that it notified GCC on several occasions that the signed LMA was unacceptable.

CHRW also denies that it ever guaranteed GCC a 10% savings. Instead, CHRW asserts that it represented that there was the potential for GCC to obtain an estimated 10% savings if GCC made significant changes to its transportation network. CHRW asserts that GCC failed to make these changes and that the parties never agreed on a baseline by which to measure the savings.

GCC, in contrast, alleges that after May 6, 2002 no further e-mails or draft contracts were exchanged and that CHRW employees referenced the "contract" in various correspondence and communications with GCC. According to GCC, it was not until April 14, 2003 that CHRW told GCC the contract did not exist. On April 21, 2003, GCC notified CHRW that it believed the LMA was a valid contract between the parties. On April 29, 2003, CHRW filed suit alleging claims for account stated and unjust enrichment. On June 17, 2003, CHRW added a claim for quantum meruit. GCC counterclaimed for unfair competition, fraud, misrepresentation, and declaratory judgment. The unfair competition claim was dismissed pursuant to a motion by CHRW. GCC then added counterclaims for breach of implied covenant of good faith and fair dealing, negligent misrepresentation, and breach of implied contract.

## ANALYSIS

**I.   STANDARD OF REVIEW**

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to

return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view all of the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     GCC's MOTION FOR SUMMARY JUDGMENT

### A.     CHRW's Quasi-Contractual Claims

GCC requests that the Court find that an express, written contract, specifically the May 6, 2002 Logistics Management Agreement, exists between the parties and, therefore, dismiss CHRW's quasi-contractual claims. GCC asserts that it was required to sign the LMA that CHRW provided in order for GCC to hire CHRW to handle its transportation needs and that once it signed the LMA and sent it back to CHRW, the contract was binding on both parties.

CHRW argues that because GCC made changes to material terms in the LMA before it sent it back to CHRW, GCC did not accept CHRW's offer, but instead made a counteroffer. CHRW asserts that it repeatedly told GCC there was not a contract and that both parties agreed to continue their relationship while working on finalizing a contract. CHRW further argues that the contract cannot be considered final because it did not include a baseline to calculate GCC's savings. In response, GCC asserts that CHRW cannot produce any e-mails or letters that state that the LMA was objectionable to CHRW and that the parties' subsequent conduct executing the contract shows that there,

in fact, was a contract. GCC also argues that agreeing to a baseline to calculate the 10% savings was not a condition precedent to the formation of a contract.

The central factual issue in this case is whether a contract existed between the parties. Genuine issues of material fact exist with respect to the relationship between the parties when CHRW sent the LMA to GCC, the significance of the changes GCC made to the LMA, whether determining a baseline to calculate the 10% savings was a condition precedent to forming a contract, and the extent of the parties' communication about the contract after May 6, 2002. As such, the Court denies GCC's request that the Court find that an express contact existed and denies GCC's motion to dismiss all of CHRW's quasi-contractual claims.

### B. CHRW's Damages Claim

GCC asserts that CHRW's damages claim should be dismissed as a matter of law because 1) CHRW intends to rely on rate schedules that were attached to the contract which CHRW argues is invalid; 2) CHRW's "complex damages evidence" requires expert testimony to establish the reasonable value of the services; and 3) CHRW intends to call fact witnesses to prove its case without offering any original invoices or original documentation. The Court disagrees.

As to the rate schedules, CHRW asserts that the rates schedules were agreed upon by the parties and form a contract in and of themselves. This is a factual issue for a jury to decide. If a jury finds that the rate schedules are a valid contract, certainly CHRW can rely on them as evidence of damages. Even if a jury finds that the rate schedules are neither part of a valid contract, nor a valid contract in and of themselves, however, a

reasonable jury could still find that the rate schedules are reliable evidence of the reasonable value of the services CHRW provided GCC. Furthermore, the Court finds that GCC's argument that CHRW must use outside experts to testify to the disputed invoices is without merit. CHRW intends to use the testimony of two of its employees to rebut GCC's experts. These employees have firsthand knowledge of the disputed invoices and the services CHRW allegedly performed for GCC and are, therefore, qualified to testify. In addition, pursuant to Federal Rule of Evidence 1006, CHRW can produce summaries of voluminous records. In this case, the parties dispute payment on over 5,000 invoices. CHRW also has thousands of supporting documents. Certainly this many documents cannot be presented during trial. The original documents have been made available to GCC and it can, if it so chooses, dispute CHRW's summaries and/or testimony at trial. Accordingly, the Court denies GCC's motion for summary judgment on CHRW's damages claims.

### C.   CHRW's Claim for Account Stated

"An account stated is a stated sum which the debtor has agreed to be an accurate computation of the amount due to the creditor." *Spalla v. Navarre Corp.*, 2002 WL 1949750, at *3 (D. Minn. Aug. 20, 2002). GCC has not agreed to a stated sum that is outstanding in this case. As discussed above, the unpaid invoices are in dispute in this case and CHRW will have the burden of proof as to its damages under it claims for unjust enrichment and quantum meruit. Accordingly, the Court grants GCC's motion for summary judgment with respect to CHRW's account stated claim.

## III. CHRW'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. GCC's Fraud Claims

GCC alleges that CHRW fraudulently misrepresented that 1) it performed a network analysis of GCC's needs; 2) GCC could save money by reducing its warehouses from four to two; 3) it would be in GCC's best interest to locate its East Coast warehouse in Memphis; and 4) CHRW would guarantee a 10% savings if GCC entered into a contract with CHRW. GCC also alleges that CHRW fraudulently withheld its intention to deny the existence of the contract even while performing under the terms of the alleged contract.

CHRW argues that because GCC's tort claims are based on the allegation that CHRW failed to perform under the contract, they should be dismissed because "Minnesota law does not recognize an independent tort for conduct that merely constitutes a breach of contact." *UFE Inc. v. Methode Elec., Inc.*, 808 F. Supp. 1407, 1410 (D. Minn. 1992). Although the Court agrees with this statement of the law, only GCC's allegation that CHRW fraudulently withheld its intention to deny the existence of the contract is based on the same conduct underlying CHRW's alleged breach. *Id.*

GCC's remaining fraud allegations are based on conduct that occurred prior to the parties entering into an agreement. Essentially, GCC asserts that in CHRW's December 6, 2001 presentation CHRW fraudulently represented that it had conducted a network analysis of GCC's shipping needs and that the results of that analysis were that GCC should operate two warehouses, one in California and one in Memphis, and that if GCC entered into a contract with CHRW it would guarantee that GCC would save 10%

on its shipping costs. CHRW denies all of these allegations. As all of these issues present genuine questions of material fact, they are not appropriate for summary judgment. Therefore, the Court grants CHRW's motion for summary judgment with respect to GCC's claim that CHRW fraudulently withheld its intent to deny the contract, but denies CHRW's motion with respect to GCC's remaining fraud claims.

### B. GCC's Negligent Misrepresentation Claim

CHRW asserts that because CHRW and GCC are commercial parties who negotiated a deal at arms length, CHRW did not owe GCC a duty and, therefore, GCC's negligent misrepresentation claim fails as a matter of law. As support for its argument, CHRW relies on *Meshbesher & Spence, Ltd. v. Sprint Spectrum, LP*, which states that "[w]hen sophisticated parties negotiate at arm's length and neither party is in the role of providing information as guidance to the other party . . . no duty attaches for the purposes of a negligent misrepresentation claim." 2004 WL 2801590, at *5 (D. Minn. 2004). GCC asserts that CHRW was acting as a business consultant when it made its presentation on December 6, 2001 and, therefore, CHRW was "in the role of providing information as guidance to the other party." *Id.* CHRW, on the other hand, argues that it was merely a service provider that made a sales presentation to GCC.

The basis and scope of the parties' relationship prior to entering their agreement in May 2002 is a factual question. A reasonable jury could find that CHRW was acting as a consultant when it made its presentation and, therefore, assumed a duty towards GCC. As such, the Court denies CHRW's motion for summary judgment with respect to GCC's negligent misrepresentation claim.

### C.     GCC's Breach of Contract Claim

CHRW asserts that GCC's breach of contract claim, which seeks a 10% reduction in freight costs over GCC's costs per pound shipped in 2001, should be dismissed because it is undisputed that the parties never agreed on a baseline to measure the savings. As discussed *supra*, GCC asserts that the LMA is a valid written contract, that it includes language guaranteeing GCC a 10% savings, and determining a baseline for calculating the 10% savings was not a condition precedent to the formulation of the contract. These are factual issues central to this dispute and are not appropriate for summary judgment. Accordingly, the Court denies CHRW's motion for summary judgment on GCC's breach of contract claim.

### D.     GCC's Declaratory Relief Claim

GCC seeks a declaratory judgment of 10% savings over its 2001 shipping costs. CHRW argues that GCC is not entitled to a declaratory judgment because no baseline to calculate such savings was ever determined and the contract does not contain a remedy for the alleged failure to achieve the savings. As stated *supra*, genuine issues of material fact exist as to whether CHRW guaranteed a 10% savings and whether the parties needed to agree to a baseline in order for GCC to enforce the alleged guarantee. As such, the Court is not in the position to grant GCC a declaratory judgment. Therefore, the Court grants CHRW's motion for summary judgment on GCC's claim for declaratory relief.

## IV. CHOICE OF LAW

CHRW argues that the Court should apply Minnesota law and GCC argues that the Court should apply Minnesota and California law. Minnesota is the forum state, the parties chose Minnesota law in the contract, and it is undisputed that the elements of GCC's tort claims are the same in Minnesota and California. Therefore, the Court will apply Minnesota law. *Davis by Davis v. Outboard Marine Corp.*, 415 N.W. 2d 719, 723 (Minn. Ct. App. 1987) (stating that when "there is no significant distinction between the two jurisdictions' laws," the law of the forum state applies).

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that Ghirardelli Chocolate Company's Motion for Summary Judgment [Docket No. 163] is **GRANTED IN PART and DENIED IN PART** as follows:

1. Ghirardelli Chocolate Company's motion is granted with respect to C.H. Robinson Worldwide, Inc.'s claim for account stated.

2. Ghirardelli Chocolate Company's motion is denied in all other respects.

**IT IS FURTHER ORDERED** that C.H. Robinson Worldwide, Inc.'s Motion for Partial Summary Judgment [Docket No. 160] is **GRANTED IN PART and DENIED IN PART** as follows:

1. C.H. Robinson Worldwide, Inc.'s motion is granted with respect to Ghirardelli Chocolate Company's claim for declaratory judgment and Ghirardelli

Chocolate Company's claim that C.H. Robinson Worldwide, Inc. fraudulently withheld its intent to deny the contract existed.

      2.    C.H. Robinson Worldwide, Inc.'s motion is denied in all other respects.


DATED: July 1, 2005                 s/ John R. Tunheim
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                                   United States District Judge